CITY OF NEW ORLEANS *v.* THE SOUTHERN BANK OF NEW ORLEANS.

Where property has been omitted in the general State assessment, a supplemental assessment may be afterwards made, and in this case it is not necessary that the formalities of time, manner and place required by law should be observed.

The ordinance of the Common Council of the city of New Orleans, approved the 25th of March, 1857, levying a tax on the capital of banks, was subsequent to the Act of the 19th of March, 1857, exempting free banks from taxation, and in conflict with that Act, and therefore void.

But the ordinance of the 23d of February, levying a special railroad tax, was legal at the time it was passed, and as it conferred equitable, if not vested rights, upon the bond-holders, could not be repealed, if susceptible of repeal, except by some positive provision of law or the clearest and most patent implication. But the statute of 19th of March, 1857, applies only to the future. It is from and after the passage of this Act, capital of free banks shall be exempt from taxation  " A law can only prescribe for the future ; it can have no retrospective operation, nor can it impair the obligation of contracts." Art. 8, C. C.

APPEAL from the Second District Court of New Orleans, *Morgan,* J.
*Laville & Morel* and *W. O. Denègre,* for plaintiff and appellant. *Waples & Eustis, W. W. King* and *George Eustis, Jr.,* for defendant.

MERRICK, C. J. This suit was brought to recover of the defendant $18,000 of taxes assessed upon the *capital* of said corporation, $2,760 of said sum being for the special railroad tax, and the residue, $15,240, for ordinary purposes.

The suit was commenced by filing the tax receipt and publication under the statute.

Defendant excepted to the form of proceeding. This exception was ordered to be tried with the merits.

The answer was a general denial, and specially denied that any legal ordinance or assessment had been made ; denied the authority of the city to pass any ordinance imposing the tax in question ; averred the same to be unconstitutional, not being equal nor uniform, and not imposed in the mode and manner required by law. It was further averred, that the Southern Bank is a free bank, and exempt from this form of taxation.

The statute of the 20th of March, 1856, clearly authorized the assessment of taxes upon the capital of the bank. See sections 36, 38, 41 and 68, pp. 146, 147, 152.

The city did not avail itself of this right of taxation, until the 23d of February, 1857, when the following ordinance was approved :

" *Resolved,* That a tax at the rate of twenty-three cents on every one hundred dollars of the assessed value of all real estate, slaves, *capital,* income and furniture, appearing on the tableau of the assessment, made by the State Assessors for the year 1856, be, and the same is hereby levied to pay the annual interest on the bonds issued by the city of New Orleans for subscriptions to the stocks of the New Orleans, Jackson and Great Northern Railroad Company, the New Orleans, Opelousas and Great Western Railroad Company, and to the Pontchartrain Railroad Company."

On the 19th of March, 1857, an Act was passed in the following words :

" Be it enacted, &c. That from and after the passage of this Act, all capital employed in free banking in this State, shall be exempt from municipal taxation."

12

On the 25th of March, of the same year, the following ordinance was approved :

" *Resolved,* That a tax at the rate of thirty-seven cents on every one hundred dollars of the assessed value of all real estate and slaves appearing on the tableau of assessment made by the State Assessors for the year 1856, and a tax of one hundred and twenty-seven cents on every one hundred dollars of the assessed value of capital, income and furniture, appearing on the tableau of the State Assessors of the year 1856, be, and the same *is hereby levied to pay the ordinary expenses of the city government for the year* 1857, over and above the receipts from other sources."

The $2,760 is claimed under the first, and the $15,240 under the last of these ordinances.

I. The first point made by the defendant is, that the claim of the plaintiff is for a debt which has ceased to be a tax, and, therefore, the suit ought to have been *via ordinaria.* It is sufficient answer to this to say, that conceding the debt to exist, (as is done by the exception,) it appears to be due, if at all, under an assessment as a tax. It is not pretended that the law as to the collection of taxes has been repealed. The suit was, therefore, commenced in conformity to the mode provided for the collection of taxes. The cases of *Cooper* v. *Hodge,* 17 La. 476, 1 Rob. 565, and *Scott* v. *Duke,* 3 An. 253, are without application to this branch of the case.

II and III. The objections that the free banks can only be taxed at the same rate as other personal property, and that they cannot exceed in the agregate $1 50 on every $100, it is needless to consider, under the views we hold in reference to the fifth point.

IV. The fourth point made is, that " the assessment is the basis of the tax as to its imposition, and must be in strict conformity to law, otherwise it is void and of no effect."

The law requires the assessment rolls to be made and left with the Secretary of the Board of Assessors, before the 15th of August of each year. Notice is then to be given, by publication, thirty days, that they are subject to correction. The rolls afterwards are to be delivered on the first of October, to the Secretary of the Board of Supervisors, who are required to examine and equalize, and correct the valuations, and make such alterations as may be needed relative to the property of non-residents, and carry to the proper column the sum found as the amount of the tax. The Board of Supervisors are required, after having certified the assessment rolls, to deliver the same, on the first Monday of December of each year, to the Collector.

In the assessment made under these provisions of law, the capital of the banks was omitted, this roll being made for the joint benefit of the State and the city of New Orleans.

It seems that a supplemental assessment was made in December, which embraced the objects of municipal taxation, which were exempt from State taxes. It is argued, that inasmuch as this assessment was not made in the time, manner, and place mentioned in the statute, it is absolutely void, and several common law authorities are cited in support of the position.

It appears to us, that the authorities cited are not strictly applicable to the city of New Orleans. The law and Constitution require taxation to be equal and uniform, and by the 74th section, it is provided, that if lots, parts of lots, squares, tracts of land, or *other property,* be omitted in the assessment of one or

more years, the same, *when* discovered, shall be assessed for the years during which it was omitted, and for the current year. What is meant by personal property, is defined by the thirty-eighth section of the Act, and included capital. See also Act of 19th of March, 1856, p. 110, sec. 6.

The law informed the bank that its capital was subject to taxation for 1856, and it cannot complain that a supplemental assessment supplied and corrected an error resulting possibly from the neglect of the bank to give in its capital to the Assessors for assessment. The city had power to cause the supplemental assessment to be made, as resulting from the peculiar objects of municipal taxation, and the section of the Act cited.

V and VI. It is further objected, that the assessment was made after the legal power to make an assessment had been exhausted, and the Act of 19th of March, 1857, exempting free banking capital from municipal taxation, is a prohibition against any city ordinance subsequently passed in conflict with it.

We think it is quite clear, that the ordinance of the 25th of March, 1857, which was passed after the Act of the Legislature already quoted, was in conflict with that Act and void. It is true, as contended for by appellant, that it is the assessment of 1856, which is collected in 1857, but the city did not avail itself of its right of taxation during the period of its existence. When it undertook to act in March, it was divested of power over the subject-matter. There is no doubt that the tax of $15,240 was properly rejected.

The residue of the tax, viz, $2,760, presents a different question. The city had power, and it was enjoined upon the city as a duty, to make this levy of the tax at the time it was made.

It is objected, that the 42d section of the City Charter provides, that the Common Council shall, for the purposes of that Act, *once, and not of-tener, in each and every year, lay an equal and uniform tax* upon all property, real and personal in said city. Acts 1846, p. 148.

It is contended that, as the supplemental assessment was made in December, 1856, the power to make the assessment was already exhausted. This view has been met by what we have already said on another branch of the case. In answer to what has been said in some of the other cases depending on this question, we may further remark, that the Constitution provides, that whenever the Legislature contracts a debt exceeding. $100,000, unless in the case of war, to repel invasion, or to suppress insurrection, they shall, in the law creating the debt, provide adequate means for the payment of the interest and of the principal, when the same shall fall due. And the said law shall be irrepealable until principal and interest are fully paid and discharged, or unless the repealing law contains some other adequate provision for the payment of principal and interest. Art. 111 Const.

By the Act of 1855, it is provided, that the police juries and municipal authorities, shall not have power to contract any debt or pecuniary liability, without fully providing in the ordinance creating the debt, the means of paying principal and interest, and that the enactment providing for such payment, shall remain in force until the debt and interest is paid.

It is known that the city, by ordinances, subscribed $2,000,000 of stock in the New Orleans, Jackson and Great Northern Railroad Company, and $1,500,000 to the New Orleans, Opelousas and Great Western Railroad, and for the payment of the interest upon the bonds, &c., the Common Council were required, by the ordinance for the security of the debt, to levy a special tax, in January in each year, on real estate and slaves.

Here, then, under the Constitution, was an object of special legislation, which involved, to some extent, the faith of the city.

Now, the Legislature, by the 117th section of the Act of 1856, confirmed the former action of the Common Council, and extended the special tax to real and personal property, which, as defined in the Act, included *capital*.

This paragraph of the section is as follows :

" Be it enacted, &c., That the Common Council shall annually, in the month of January, pass an ordinance to raise, by a special tax upon all property, real and personal, in New Orleans, a sum sufficient to pay the annual interest on the bonds issued by the city for subscriptions to the stocks of the N. Orleans, Opelousas and Great Western Railroad Company, the New Orleans, Jackson and Great Northern Railroad Company, and the Ponchartrain Railroad Company, specifying the rate of said tax, which shall be collected at the same time, and in the same manner as the consolidated loan tax of said city ; and all ordinances, resolutions, or other acts passed by the Common Council, after the first day of January in each year, except an ordinance to impose said consolidated loan tax and the ordinance provided for by this section, shall be null and void, unless the ordinance provided for by this section, shall have been previously passed."

The residue of the section relates to the dividends of the railroads.

The ordinance, then, of the 23d of February, 1857, being legal at the time it was passed, and conferring equitable, if not vested, rights upon the bond-holders, as is apparent by reference to the sixth section of the Act of 1855, (Phillips' Digest, p. 345,) and Acts above recited, could not be held to be repealed, if susceptible of repeal, except by some positive provision of law, or the clearest and most potent implication.

But when we look to the statute of 1857, we find it only applies to the future. It is from and after the passage of this Act capital of the banks shall be exempt from municipal taxation. It does not say, that former assessments and ordinances are repealed, (which might work injustice,) but that capital shall hereafter be exempt. This Act is then to be construed, as we are directed by Art. 8 C. C. " A law can only prescribe for the future ; it can have no retrospective operation, nor can it impair the obligation of contracts."

The cases cited in 17 La., 1 Rob., and 3 An., are cases where the laws related to the *modes* of proceeding.

Such laws, by acting upon a process then pending, are really operating *in futuro*, although such operation, by depriving a party of final judgment in the form of action which he has adopted, may render vain all his previous proceedings. But that is not the case here ; the question is, has the corporation the right to exact from the defendant twenty-three cents on $100 of capital, to pay the interest on railroad bonds ? It is a question of justice and right, and not a matter pertaining to the forum.

The tax of twenty-three cents on the $100, which was valid, did not become invalid by the *ordinance* of the 25th of March, 1857.

It is, therefore, ordered, adjudged and decreed by the court, that the judgment of the lower court be avoided and reversed, and that the plaintiff recover, as the special railroad tax, the sum of two thousand, seven hundred and sixty dollars, with one per cent. interest thereon per month, from the first day of June, 1857, until paid ; and that the defendant pay the costs of both courts.

BUCHANAN, J., separate opinion. I think the Chief Justice has made it very clear, that the city tax of twenty-three cents on the $100, for the payment of the

interest on the railroad bonds, is one that the Legislature could not constitutionally interfere with, apart from the fact of this ordinance being anterior to the Act of the Legislature of the 19th of March, 1857.

But I go further than the opinion of the majority of the court, in this : that I believe the exemption of the four millions of capital of the free banks, defendants in these cases, from the taxation to which all other capital in New Orleans is subjected, is equally unconstitutional.

In developing this idea, I go back to the decision of the majority of this court, pronounced by Chief Justice Merrick, in 1856.   11 An. 41.

That decision held, that the 35th section of the Free Banking Law, approved April 30th, 1853, had the force and effect of a contract between the State of Louisiana and the defendants herein.   That 35th section reads as follows :

" That bankers and banking companies, doing business under this Act, shall be taxed upon their capital stock at the same rate as other personal property under the laws of this State."

This section was held to absolve the free banks from paying a license to the city, for exercising the business of banking.

At the session of the Legislature following that decision, a law was passed, exempting the capital of free banks from municipal taxation.   This law gives those institutions an advantage, equal to one and a half per cent. per annum, over all individual capitalists, or associations of capitalists not incorporated as free banks, in the important business of banking, which furnishes the means for all the operations of commerce.

This Act of 19th of March, 1857, appears to me to be inconsistent with Art. 123 of the Constitution.   That Article declares, that " all property on which taxes may be levied in this State, shall be taxed in proportion to its value, to be ascertained as directed by law.·  No one species of property shall be taxed higher than another species of property of equal value, on which taxes shall he levied."   The same Article declares, that "taxation shall be equal and uniform."

But what uniformity is there in the taxation of my individual capital, employed in banking, at the rate of one and a half per cent. per annum, while any six of my neighbors (Acts 1853, p. 302) may go before a Notary Public, and by associating themselves as free bankers, set the Tax Collector at defiance ?   This I take to be a *freedom* in banking, which the framers of the free banking Act never contemplated.

The proof that they did not do so, is found in the 35th section of the Act copied above.   That section implies a contract, we have said in the case in 11 Annual. Very well; if a contract, I suppose it was as much so for the one party as for the other—for the free banks, as for the State.   But it may be objected, that the State was at liberty, if it thought proper, to release the other party to this contract from his obligations under the contract.

In answer to this, I would say, that the Act of 19th of March, 1856, which authorized the city of New Orleans to tax capital, is as much a law of the State as the Act of 19th of March, 1857.   The ordinances taxing capital under that law, are valid and binding until the law is repealed.   And we decide in this very case, in conformity to our previous decisions, and in opposition to the argument of the counsel for defendants, that tHe Act of 19th of March, 1856, has not been repealed.   The municipal ordinances, then, passed in virtue of a law of the State which is not repealed, are (in the words of the 35th section of the free

banking Act) " laws of this State," which require the same authority for their repeal, as that which enacted them.

I conclude, that the free banks cannot have a relief from the obligation imposed upon them by section 35 of the free banking Act, so far as municipal taxation of their capital is concerned, without a repeal of the Act of 19th March, 1856, which authorizes the city of New Orleans to tax capital; and that such repeal cannot be inferred from the terms of the Act of 19th of March, 1857, because that would be giving to said Act, a partial, an unequal, and, consequently, an unconstitutional operation.

There is another consideration stated in the argument of the counsel for the city, which does not seem to me to have received the attention that it deserves.

This is a suit for a tax on defendant's capital, for the year 1856. Now, the wording of the Act of 19th of March, 1857, " from and after the passage of this Act, the free banks *shall be exempt*," &c., seems entirely consistent with the imposition of a tax for the year 1856, the year previous to the passage of the Act. Taxes are imposed *for the year.* The exemption spoken of by the statute, may be taken to mean, an exemption *for the current year, and for future years.* The language is prospective; not retrospective, nor (by consequence) *retroactive.*

In my opinion, the plaintiff is entitled to judgment for the whole amount claimed.